PER CURIAM.
Appellants, plaintiffs below, brought a class action for themselves and on behalf of other subscribers to appellee’s cable television system which it operated in Monroe County pursuant to an exclusive franchise granted by the state of Florida, Monroe County, and the City of Key West. By their second amended complaint, appellants sought damages from appellee, defendant below, for alleged installation charges in excess of those allowed to be charged by appellee under its franchise agreement and damages they alleged were caused by discriminatory rate practices. The franchise agreement provided for, among other things, a $150.00 contribution, exclusive of all taxes and licenses, for installation in each individual home; provided, however, that the locations thereof shall not require labor and materials in excess of those provided for in the current rate schedule of the company. If additional labor and materials are required, the company may require an additional contribution. The franchise holder is authorized to increase the service rates to provide for additional costs of operation as additional channels, services, and facilities are installed, but in no event shall such rates be more than $7.-50 per month without further approval of the Board of County Commissioners.
The substance of appellants’ complaint below was that appellee had entered into subscription contracts with appellants which exceeded the installation and service charges which it was authorized to charge pursuant to the franchises and license under which it operates its Cable Television System. Appellants further contend that appellee’s use of two types of subscription *36 contracts, to-wit: Class A contracts and Class B contracts, constitutes a discriminatory rate practice.
In entering its final judgment dated July 3, 1974, after a nonjury trial, the trial court found in pertinent part as follows:
“First, this Court has carefully reviewed each of the franchises and the license under which the Defendant operates its Cable Television System. This Court is not unmindful of the practical construction of the subject franchises by the parties to them for a considerable period of time before those franchises became the subject matter of the instant controversy. Further, the individual subscription contracts serve to reinforce the aforesaid practical construction of the franchise documents. The construction of those franchise documents urged by the Plaintiffs is unreasonable and not compatible with the clear purview and content of those documents. The only reasonable construction of the term ‘individual home’ as used in the installation fee and service rate sections of the franchise agreements, clearly means the SUBSCRIBER in the individual home, and it is manifestly clear that the Defendant is authorized to charge each individual subscriber to the Defendant’s Cable Television System the installation fees and service charges authorized under the franchise agreements.
“Secondly, Plaintiffs contend that Defendant’s use of two types of subscription contracts, to-wit: Class A and Class B constitute a discriminatory rate practice. The evidence before this Court reflects that the Defendant has offered all subscribers an option to elect either the Class A or Class B subscription contract. The Class A subscription contract requires the subscriber to pay a $150 installation fee and a service charge of $6.25 per month. . The Class B contract requires the subscriber to pay an initial installation fee of $9.95 and a monthly charge of $8.75 consisting of $7.50 for monthly service charge and the remaining $1.25 being applied towards installation fees as provided in the contract. The testimony reflects that the Class B contract was initially established at the instance and request of the United States Navy, in order to accommodate the large number of transient military personnel at the navel establishment in Key West, by affording them the option of selecting which class of subscription contract would be most economical for each subscriber. This option to elect was also made available to all subscribers in the Monroe County and Key West area. This Court noted, with interest, that each of the named plaintiffs testified that they elected the Class B subscription contract because it was to their own financial best interests to elect the Class B contract. It is difficult to understand how Plaintiffs herein can justifiably claim to be an aggrieved party under such circumstances. Furthermore, the testimony and record before this Court affirmatively reflects that the monthly service charge differential between the Class A and Class B subscription contracts are fully justified and founded upon increased operational costs, service costs, as well as additional administrative costs required to be performed by CABLE-VISION, INC. for Class B subscribers due, among other things, to the high turnover rate experienced with Class B subscribers. Furthermore, this Court notes that the monthly service rate charged under the Class B subscription contract does not exceed the monthly service rate authorized under any of the franchises or license under which the Defendant operates. The record before this Court fails to establish any basis for Plaintiffs’ claim of discriminatory rate practices by the Defendant.
“This Court has carefully reviewed the depositions, exhibits, pleadings, and has considered and weighed all of the testimony adduced at trial and upon consid *37 eration of the entire record in this cause, it is therefore:
“CONSIDERED, ORDERED AND ADJUDGED AS FOLLOWS:
‡ ‡ ‡ ‡ H4
“3. That the equities in this cause are with the Defendant, and that Plaintiffs shall take nothing by this cause and the Defendant, CABLE-VISION, INC, a Florida corporation, shall go hence without day.”
Appellants urge reversal and have raised the following points on appeal (we need not reach the third point relative to the dismissal of the class action): (1) the franchise agreements are properly construed as allowing appellee to charge only one $150.00 installation fee per home, and the trial court erred in construing the franchises to mean that appellee is authorized to charge each individual subscriber an installation fee; and (2) the trial court erred in holding that the appellee was not guilty of charging discriminatory rates to class B subscribers since it appeared from the evidence and the franchise agreements that class B subscribers were being charged a higher service fee than the service fee charged class A subscribers for identical services.
We have carefully reviewed the points raised in the light of the record, briefs, and arguments of counsel, and have concluded that no reversible error has been shown.
It appears from the record that there was substantial competent evidence to support the judgment. A judgment in a nonjury case will not be reversed unless it clearly appears that the judgment is erroneous or unless the findings of the trial court are manifestly against the weight of the evidence or contrary to the legal effect of the evidence.' See, e. g., Leggett v. Seaboard Coast Line R. Co., Fla.App.1969, 221 So.2d 16; Garner v. Gulf Federal Sav. & Loan Asso., Fla.App.1969, 218 So.2d 192; and see 2 Fla.Jur., Appeals §§ 316 and 343.
For the reasons stated, the final judgment appealed is affirmed.
Affirmed.